**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ANDREW M. LIEB,

                          Plaintiff,

          - against -

KORANGY PUBLISHING, INC. (d/b/a
THE REAL DEAL),

                        Defendant.
------------------------------------------------------------X

                                      **MEMORANDUM**
                                      **AND ORDER**

                                      15-CV-40 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**    **PRELIMINARY STATEMENT**

        Plaintiff Andrew Lieb ("Plaintiff") brings this action against Defendant Korangy Publishing, Inc. (d/b/a The Real Deal) ("Defendant") alleging cause of actions for copyright infringement under the Copyright Act, 17 U.S.C. § 106, and deceptive business practices under New York General Business Law ("N.Y. Gen. Bus. Law") § 349.  *See* First Amended Complaint ("FAC") [DE 21].  Plaintiff is the holder of the copyright to the online article "10 Surprises When Inheriting Real Estate" (the "Copyrighted Work").  *See* Am Compl. ¶¶ 12-14.  Plaintiff alleges that Defendant (1) infringed upon the Copyrighted Work by copying and promoting its contents in a separate article, "Watch for These 10 Surprises When Inheriting Real Estate," published on Defendant's website therealdeal.com ("The Real Deal"); and (2) engaged in unlawful business practices by advertising the infringing work on the Real Deal, social media websites, and other outlets.  *See id.* ¶¶ 11-29.

        Before the Court is Plaintiff's motion to amend the First Amended Complaint ("FAC"), pursuant to Fed. R. Civ. P. 15 and 16, to add causes of action under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(A), for false designation of origin and false advertising.  *See* Notice of Motion to Amend the Complaint [DE 31].  Plaintiff asserts that he became aware of facts necessary to support his Lanham Act claims during the depositions of two of Defendant's employees, who purportedly testified that "Defendant intended to deceive consumers by systematically engaging in the company-wide practice of employing reporters whose job is to misappropriate others' articles and claim original authorship, and then post such misappropriated articles on Defendant's website."  Plaintiff's Memorandum of Law In Support of Motion to Amend the Complaint ("Pl.'s Mem.") at 6 [DE 31-2].  Defendant opposes the motion, arguing that Plaintiff has not shown good cause to amend the Amended Complaint and, in any event, his proposed amendments would be futile.  *See* Defendant's Memorandum of Law in Opposition to Motion to Amend the Complaint ("Def's Opp'n") at 1-2

[DE 34].

For the reasons set forth below, Plaintiff's motion to amend the Complaint is DENIED.

II.  BACKGROUND

A.  The FAC

Plaintiff is an "independent contractor blogger" for the online publication The Huffington Post where he "draft[s] articles regarding real estate legal issues in New York State."  FAC ¶¶ 9, 10(a).  Plaintiff's articles are published on The Huffington Post's website, huffingtonpost.com.  *Id.* ¶ 10(b).  "Plaintiff retained the copyright to his works and only granted . . . The Huffington Post a license for use."  *Id.* ¶ 10(c).

On or about October 31, 2014, the Copyrighted Work was published on huffingtonpost.com.  *Id.* ¶ 12; *see* Copyrighted Work, annexed as Ex. 1 to the FAC  Plaintiff was issued a Certificate of Registration for the Copyrighted Work on November 12, 2014.  *Id.* ¶ 13; *see* Cert. of Registration, annexed as Ex. 2 to the FAC.

Defendant is the publisher of the website The Real Deal.  *Id.* ¶ 11.  On or about November 1, 2014, Defendant published the article "Watch for These 10 Surprises When Inheriting Real Estate" on The Real Deal ("the Infringing Work").  *Id.* ¶ 16; *see* Infringing Work, annexed as Ex. 3 to the FAC [DE 21-3].  Christopher Cameron ("Cameron") is the author of the Infringing Work.  *See* FAC ¶ 33(b); Infringing Work, Ex. 3, FAC.  The Infringing Work references the Copyrighted Work and contains a hyperlink to the Copyrighted Work within the body of the article.  FAC ¶ 17; *see* Infringing Work, Ex. 3, FAC (" . . . here is a roundup of the 10 most common headaches real estate heirs face via the Huffington Post"), *id.* (indicating "[Huffington Post]" hyperlink).

The FAC asserts two causes of action against Defendant:  copyright infringement in violation of the Copyright Act and deceptive business practices under N.Y. Gen. Bus. Law § 349.  *See* FAC ¶¶ 19-40.  In support of his deceptive business practices claim, Plaintiff alleges that Defendant advertised the Infringing Work on The Real Deal, as well as "pinterest.com and/or facebook.com, and upon information and belief, other advertisements" (collectively, the "Advertisements").  *Id.* ¶ 29.  Plaintiff alleges that the Advertisements "were intended to attract consumers to therealdeal.com," and that they had "a broad impact" on users and/or readers of therealdeal.com because:

> a.  The Advertisements hyperlink to the Infringing Work, which, in turn, distorts information contained in the Copyrighted Work and thereby misleads and consequently harms consumers;
>
> b.  The Advertisements hyperlink to the Infringing Work, which, in turn, hyperlinks to the Copyrighted Work and thereby wrongfully suggests and/or implies and/or represents that the Infringing Work was published with the apparent authority to hold itself out as of equal value to the Copyrighted Work and thereby harms consumers.
>
> c.  Search engine quer(ies) and/or search(es) for the title of the Copyrighted Work and/or a subset of the title, produces first-page result(s) of the Infringing Work and thereby misdirects consumers at large to the Infringing Work and thereby harms consumers.

*Id.* ¶¶ 30, 32.  Plaintiff further alleges that:

Defendant's Advertisements have a broad impact on Copyright Holders at large because:

a. The Advertisements hyperlink to the Infringing Work, which, in turn, hyperlinks to the Copyrighted Work and thereby wrongfully suggests and/or implies and/or represents that the Infringing Work was published with the authorization of Plaintiff;

b. The author of the Infringing Work, non-party Christopher Cameron, has authored numerous articles on behalf of Defendant as its agent that hyperlink to works of Copyright Holders and thereby establishes a pattern of copyright infringement on Copyright Holders by Defendant;

c. Upon information and belief, the Copyrighted Work is one of the numerous articles that non-party Christopher Cameron as an agent of Defendant published without the authorization of the Copyright Holder(s).

*Id.* ¶ 33. According to Plaintiff, "Defendant's Advertisements were deceptive and misleading in a material way in that the Infringing Work was falsely advertised as a wholly original work and it was falsely advertised to have been authored by a non-party, Christopher Cameron." *Id.* ¶ 34.

**B.     Relevant Procedural History**

Plaintiff filed his Complaint on January 6, 2015. DE 1. This action was originally assigned to District Judge Arthur D. Spatt. *See* 1/7/15 Elec. Order. On March 13, 2015, the parties subsequently filed a consent to the jurisdiction of a United States Magistrate Judge for all purposes, pursuant to 28 U.S.C. § 636(c). Judge Spatt "so ordered" the consent form and this matter was transferred to this Court for all further proceedings. DE 19.

The Court held an Initial Conference with the parties on March 13, 2015 and entered a Case Management and Scheduling Order ("CMSO"). DE 17. Pursuant to the CMSO, the parties were given a deadline of June 12, 2015 to make a formal motion under the Federal Rules to amend the pleadings. *Id.* The CMSO advises that "**[t]he deadlines in this order will be enforced, and will be modified only upon a timely showing of good cause**." *Id.* § IV(a) (emphasis in original). The CMSO also states that

"[a] request for an extension of any deadline submitted less than 30 days before that deadline will be considered untimely and may not be granted absent extraordinary circumstances." *Id.* § IV(b).

On May 27, 2015, the parties entered into a "Stipulation to Amend the Complaint." DE 20.[1] The Court "so ordered" the Stipulation on June 3, 2015, and Plaintiff filed the FAC. DE 21, DE 23. Defendant interposed an Answer to the FAC that same day. DE 22.

On July 23, 2015, Plaintiff deposed two employees of Defendant: (1) Stuart Elliot, The Real Deal's Editor-in-Chief, and (2) Cameron, a reporter and weekend editor for The Real Deal (together, "the Employees"). *See* Elliot Dep. Tr., attached as Ex. 5 to Declaration in Support of Motion to Amend the Complaint ("Pl.'s Decl.") [DE 31-7]; Cameron Dep. Tr., attached as Ex. 6 to Pl.'s Decl. [DE 31-8]. Elliot testified, as relevant here, that The Real Deal publishes "original pieces but also summaries. . . [o]f stories and other publications." Elliot Dep. Tr., Ex. 5, at 12: 9-19. Elliot described a "summary" as "just an excerpt from another story that is basically summarizing the other story in as few words as possible." *Id.* at 12:23-13:2. Elliot testified that one of the "main job duties" of a weekend editor like Cameron is "summarizing stories." *Id.* at 21:19-23. Cameron testified that on average, he generated 18 summaries per week, "nine on Saturday and nine on Sunday." Cameron Dep. Tr., Ex. 6, at 7:4-7. Cameron also testified that The Real Deal's freelance copy editor did not fact check any of the facts or substance of the summaries. *Id.* at 9:7-15.

During the July 31, 2015 Discovery Status Conference, the parties confirmed that "discovery, for all intents and purposes, is completed." DE 26 ¶ 2. The Court put a briefing schedule in place for summary judgment motion practice, and set September 28, 2015 as the deadline for the movant to serve

---

[1]	According to the Stipulation, Plaintiff amended paragraph 33(c) of his original Complaint to add the phrase "[u]pon information and belief." *See* FAC ¶ 33(c) ("Upon information and belief the Copyrighted Work is one of the numerous articles that non-party Christopher Cameron as an agent of Defendant published without the authorization of the Copyright Holder(s)").

motion papers, Rule 56.1 Statement of Undisputed Facts, and a Memorandum of Law.  *Id.* ¶ 3.

Plaintiff's counsel noted during the conference "that he inadvertently did not request a jury trial at the

time the Complaint was filed, nor since that time."  *Id.* ¶ 4.  The Court directed the parties to speak

further on this issue and "[i]f the parties are unable to agree on the late filing of a jury demand, then

plaintiff's counsel will make a motion" following "the outcome of the anticipated motion for summary

judgment."  *Id.*

### C.  The Instant Motion to Amend

On September 15, 2015, Plaintiff filed a letter motion stating that he "intends to bring a motion

to amend his complaint based upon evidence newly discovered during the depositions of Defendant."

DE 28.  Plaintiff's counsel requested an adjournment of the September 28, 2015 deadline for Defendant

to serve its summary judgment motion papers "to a date after the determination of Plaintiff's motion to

amend his complaint."  *Id.*  The Court granted Plaintiff's motion on September 16, 2015 and directed the

parties to provide the Court with a proposed briefing schedule on the motion to amend the FAC.

9/16/15 Elec. Order.  The parties thereafter submitted a briefing schedule which the Court "so ordered"

on September 18, 2015.  DE 29, DE 30.  The instant motion to amend the FAC was fully briefed and

filed on ECF on October 16, 2015.  *See* DE 31-DE 34.

### D.  The Proposed SAC

Plaintiff's Proposed SAC ("PSAC") adds three causes of action under Section 43(a) of Lanham

Act:  false designation of origin by "reverse passing off" (third cause of action), false designation of

origin by "passing off" (fourth cause of action), and false advertising (fifth cause of action).  *See* PSAC

¶¶ 43-77 [DE 31-6].  In alleging that Defendant engaged in "reverse passing off," the PSAC states that

"Defendant falsely designated the Infringing Work as having been authored by non-party Christopher

Cameron," and that "Defendant engaged in the systematic practice of misappropriating others' articles

and designating those misappropriations as authored by Defendant[.]" *Id.* ¶¶ 46, 47, 47(a). For the "passing off" claim, the PSAC alleges that "Defendant copied and/or summarized and/or removed information from the Copyrighted Work, thereby distorting the intended meaning of the Copyrighted Work," and "[t]hereafter . . . falsely designated the Infringing Work, which no longer was representative of the work created by Plaintiff, as having been authored by Plaintiff." *Id.* ¶¶ 56-57. The PSAC further alleges that "Defendant engaged in the systematic practice of misappropriating others' articles and altering them so that they are no longer representative of the authors' works, while simultaneously attributing them to the original authors[.]" *Id.* ¶ 58(e). The PSAC asserts that Defendant's false designation of the origin of the Copyrighted Work "was likely to cause consumer confusion because Defendant intentionally deceived consumers and Defendant's deliberate conduct in deceiving consumers is of an egregious nature." *Id.* ¶¶ 47, 58.

For the false advertising claim, the PSAC asserts that "Defendant made false advertisements in the Infringing Work by copying and/or summarizing and/or removing information from the Copyrighted Work, thereby distorting the intended meaning of the Copyrighted Work." *Id.* ¶ 65. The PSAC further states that "Defendant engaged in the systematic practice of misappropriating others' articles and designating those misappropriations as authored by Defendant[] and . . . posted the misappropriated articles on its website therealdeal.com[.]" *Id.* ¶ 66(a), (c). In addition, "Defendant made false advertising in commercial advertising or promotion," and "disseminated the false advertising through its website therealdeal.com, which directly advertises to clients and through Google." *Id.* ¶¶ 67-68. As with the false designation of origin claims, the PSAC alleges that "Defendant's false advertising are likely to confuse consumers because Defendant intentionally set out to deceive consumers by engaging in systematic false advertising[.]" *Id.* ¶ 66.

## III.   <span style="font-variant: small-caps;">Legal Standard</span>

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Accord Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). A court "should freely give leave when justice so requires" and such leave is in the court's discretion. *See* Fed. R. Civ. P. 15(a)(1)(B)(2); *accord Grace v. Rosenstock*, 228 F.3d 40, 52 (2d Cir. 2000).

Where, as here, a motion to amend is filed after a deadline set by the CCMO, the motion is subject to the more demanding standard of Rule 16(b). *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Ricciardi v. Kimco Facilities Servs. Corp.*, No. 10-CV-5731, 2012 WL 6761533, at *1 (E.D.N.Y. June 12, 2012), *adopted by* 2013 WL 42416 (E.D.N.Y. Jan. 3, 2013); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011); *Sokol Holdings, Inc., v. BMB Munai, Inc.*, No. 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009), *aff'd sub nom. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-CV-3749, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009). According to Rule 16(b), the court must enter a scheduling order setting deadlines for subsequent proceedings in the case, including "the time to join other parties [and] amend the pleadings." Fed. R. Civ .P. 16(b). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *See Parker*, 204 F.3d at 339–40 (internal quotations omitted); *accord Ricciardi*, 2012 WL6761533, at *1. Thus, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given/ must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)

(quoting Fed. R. Civ. P. 15 and 16)); *see Parke*r, 204 F.3d at 340; *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle v. Town of Southampton*, No. 12-CV-4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013). "[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker*, 204 F.3d at 340; *see also Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).

Whether good cause exists under Rule 16(b) turns on the "diligence of the moving party." *Parker*, 204 F.3d at 340. To show good cause, "the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines.'" *Chrebet v. Cnty. of Nassau*, No. 09-CV-4249, 2014 WL 1836835, at *11 (E.D.N.Y. May 8, 2014 (quoting *Sokol Holdings*, 2009 WL 2524611, at *7. "In other words, the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Sokol*, 2009 WL 2524611, at *8 (citing *Parker*, 204 F.3d at 340; *Rent–A–Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)); *see Perfect Pearl*, 889 F. Supp. 2d at 457. "A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Perfect Pearl*, 889 F. Supp. 2d at 457 (quoting *Sokol*, 2009 WL 2524611, at *8); *see Lamothe v. Town of Oyster Bay*, No. 08–CV–2078, 2011 WL 4974804, at *5–6, (E.D.N.Y. Oct. 19, 2011).

While diligence is the "primary consideration" in the good cause analysis, it is not the only consideration. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (addressing application of Rule 16(b) to situation where Rule 15(a) would otherwise permit amendment as of right). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant

factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Id.*; *see Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2013 WL 1703529, at *1 (E.D.N.Y. Apr. 19, 2013) *adopted in part by*, 2014 WL 991715 (E.D.N.Y. Mar. 13, 2014); *Ritchie Risk Limited Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 n. 2 (S.D.N.Y. 2012).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004). In assessing futility, courts must analyze "whether a proposed pleading would be able to withstand a dispositive pretrial motion." *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09-CV-1652, 2013 WL 1687198, at *6 (S.D.N.Y. Apr. 18, 2013) (citing *Parker*, 204 F.3d at 339); *Touchtunes Music Corp. v. Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)). With respect to the Rule 15(a) factors, "[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." *See Cummings-Fowler v. Suffolk Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

## IV. DISCUSSION

### A. Good Cause Under Rule 16(b)

The primary, but not sole consideration in evaluating "good cause" under Rule 16(b) "is whether the movant has exercised diligence but still failed to meet the Court's deadline despite such efforts." *Chrebet*, 2014 WL 1836835, at *16. Upon reviewing the record and the submissions made on this

motion, the Court finds that Plaintiff has not demonstrated the diligence necessary to establish "good cause" to modify the deadline to amend the pleadings set in the CMSO.

Plaintiff premises his motion to amend on "newly discovered evidence" purportedly revealed during the depositions of the Employees. *See* Pl.'s Mem. at 4-6. According to Plaintiff, these witnesses testified as to Defendant's "systematic, company-wide practice of copying and summarizing articles, originally authored by others" – "facts" which Plaintiff asserts were "unavailable and unknown" to him prior to the June 12, 2015 deadline to amend. *Id.* at 4-5.

However, the Court finds that the allegations in the Complaint and the FAC demonstrate that Plaintiff either knew or should have known about Defendant's "systematic practice" of summarizing articles prior to the June 12, 2015 deadline. *See Perfect Pearl*, 889 F. Supp. 2d at 457. Plaintiff alleges in both pleadings that Defendant infringed on the Copyrighted Work "by copying and/or promoting the work" in the Infringing Work authored by Cameron and published on The Real. Compl. ¶ 22; FAC ¶ 22. The pleadings go on to allege that Cameron "has authored numerous articles on behalf of Defendant as its agent that hyperlink to works of Copyright Holders . . . ." Compl. ¶ 33(b); FAC ¶ 33(b). Similarly, the pleadings allege that, "[u]pon information and belief, the Copyrighted Work is one of numerous articles that non-party Christopher Cameron as an agent of Defendant published without the authorization of the Copyright Holder(s)." FAC ¶ 33(c); *see* Compl. ¶ 33(b). Thus, it is clear that Plaintiff was aware when he brought this action that Defendant had a "systematic practice" of (1) employing Cameron to copy and summarize other people's articles, and (2) publishing those summarized articles on The Real Deal. This is not surprising since, as Defendant points out in its opposition, the fact that articles published on The Real Deal, such as the Infringing Work, are summaries of other articles is "evident from the articles themselves, and the facts . . . were thus in plain sight at the time of publication." Def.'s Opp'n at 10. The Court therefore is not persuaded by Plaintiff's

contention that his proposed amendments are based upon information which first came to light during the July 23, 2015 depositions of the Employees.

Moreover, even assuming that Plaintiff **did** learn for the first time during the July 23, 2015 depositions that Defendant's "systematic practice" of copying and summarizing articles was not limited to Cameron and instead embodied a broader "company-wide policy of employing reporters whose job is to misappropriate others' articles and claim[] original authorship," Plaintiff has not shown that, without this information, he was unable to assert his proposed Lanham Act claims by the June 12, 2015 deadline set in the CMSO. Pl.'s Mem. at 6. As discussed, Plaintiff seeks to interpose claims under Section 43(a) of the Lanham Act for false designation of origin — based on theories of "reverse passing off" and "passing off"[2] — as well as false advertising. *See* PSAC. "To plead a reverse passing off claim for false designation of origin, a plaintiff must allege: '(1) that the product at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin.'" *Ranieri v. Adirondack Dev. Grp., LLC*, No. 11-CV-01013, 2013 WL 1292010, at *4 (N.D.N.Y. Mar. 27, 2013) (quoting *Nat'l Lighting Co. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 564 (S.D.N.Y. 2009)). A "passing off" claim requires the same elements and must also reflect that the defendant is selling its product under plaintiff's name, or that the defendant is labeling its product as the plaintiff's product. *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F.

---

[2]  Section 43(a) of the Lanham Act "'prohibits misrepresentations as to the source of a product' through two types of practices: 'passing off' (also called palming off) in which A sells its product under B's name and reverse passing off, in which A sells B's product under A's name.'" *Genometrica Research Inc. v. Gorbovitski*, No. 11-CV-05802, 2013 WL 394892, at *9 (E.D.N.Y. Jan. 31, 2013) (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994)) (internal quotation marks and alterations omitted)). Although the Plaintiff has divided his proposed "passing off" and "reverse passing off" claims "into two separate causes of action, [he is] really asserting a single claim under this provision for false designation of origin" under Section 43(a). *Id.*

Supp. 2d 545, 550 (E.D.N.Y. 2007); *see, e.g.*, *Kaplan v. Stock Mkt. Photo Agency, Inc.*, 133 F. Supp. 2d 317, 328 (S.D.N.Y. 2001)  Finally, to state a claim for false advertising, "a plaintiff must allege (1) the defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) the defendants' actions made plaintiff believe it would be damaged by the representations."  *Genometrica*, 2013 WL 394892, at *9 (internal quotation marks and alterations omitted).

Plaintiff contends that the Employees' deposition testimony established a necessary element of his proposed Lanham Act claims — namely, Defendant's "intent to deceive consumers" through its "company-wide practice of employing reporters whose job is to misappropriate others' articles and claim[] original authorship, and then post such misappropriated articles on Defendant's website."  Pl.'s Mem. at 6.  Plaintiff maintains that, because he was not aware of "requisite facts" behind "Defendant's intent to deceive and confuse consumers" prior to completing depositions, he "could not have previously asserted the causes of action for False Advertising and False Designation of Origin arising under the Lanham Act[.]"  *Id.* at 6, 8.

However, Plaintiff has not cited any case law supporting his contention that, in order to state a claim for false designation of origin and false advertising under the Lanham Act, he must allege facts showing that Defendant intended to deceive consumers.  Rather, Plaintiff has cited several cases which state, *inter alia*, that "in order for a Lanham Act plaintiff to **receive an award of damages** the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion."  *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 256 (2d Cir. 2014) (emphasis supplied) (citation omitted); *see, e.g.*, *Champagne v. Diblasi*, 36 F. App'x 15, 17 (2d Cir. 2002);

*Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 270 (E.D.N.Y. 2014) ("Consumer

deception is also presumed when the defendant 'intentionally set out to deceive the public, and the

defendant's deliberate conduct in this regard [was] of an egregious nature.'") (quoting *Johnson &

Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir.

1992)). While these cases establish that ***proof*** of intent to deceive consumers may be required for a

plaintiff to ***prevail*** on its Lanham Act claims, none of the cases state that proof of intent to deceive is a

required element to ***pleading*** these causes of action.

Moreover, in light of the allegations in the Complaint and the FAC, it appears that Plaintiff was

aware when he commenced this action that Defendant's advertisement of the Infringing Work through

The Real Deal and other websites was intentional, that these advertisements effected a "broad impact"

on consumers, and that the advertisements were misleading to consumers. *See* Compl. ¶¶ 30-34; FAC

¶¶ 30-34. Thus, even if intent to deceive consumers ***was*** a required element of Plaintiff's Lanham Act

claims, the "requisite facts" supporting this element appear to have been available to Plaintiff at the

outset of this case. The Court also notes that, contrary to Plaintiff's assertions, the testimony of the

Employees contains no "sworn admission" of Defendant's intent to deceive consumers. Pl.'s Mem. at 4.

Rather, the Employees testified, *inter alia*, as to the Real Deal's undisputed practice of publishing

"summaries" of other articles appearing on the Internet with a hyperlink attribution to the original

article. *See generally* Stuart Dep. Tr., Ex. 5, Pl.'s Decl.; Cameron Dep. Tr., Ex. 6, Pl's Decl. While

Plaintiff apparently believes this practice proves that Defendant intended to deceive consumers, that is

an issue to be resolved at summary judgment or trial, not on the instant motion to amend the FAC.

Ultimately, the Court finds that, although Plaintiff attempts to cast the Employees' deposition

testimony as the "smoking gun" to his proposed Lanham Act claims, he has not shown that the

testimony (1) revealed information which Plaintiff was not aware of or should not have been aware of

prior to the June 12, 2015 deadline to amend the pleadings, and (2) provided essential facts Plaintiff needed in order to move to amend the FAC to assert his Lanham Act claims.

The Court also finds that Plaintiff has not "provided a robust 'good cause' argument" with respect to his delay in moving to amend once the depositions of the Employees were completed on July 23, 2015. *See Balk v. New York Inst. of Tech.*, No. 11- CV-509, 2013 WL 6990767, at \*9 (E.D.N.Y. Sept. 30, 2013). Particularly, as Defendant points out in its opposition, Plaintiff's counsel never mentioned during the July 31, 2015 status conference that he intended to move to amend the FAC based on information revealed during the depositions. Rather, Plaintiff's counsel brought up an entirely separate defect with the FAC – "the fact that he inadvertently did not request a jury trial at the time the[] Complaint was filed" – and agreed to a briefing schedule for summary judgment motion practice. DE 26 ¶¶ 3-4. The Court acknowledges that counsel had not yet received the transcripts of the depositions when he appeared for the status conference. *See* Plaintiff's Reply Memorandum of Law In Further Support of Motion to Amend the Complaint ("Pl.'s Reply") [DE 32], at 1-2. However, counsel conducted the depositions himself, and, therefore, he presumably was aware of the basis for the motion to amend when he met with opposing counsel and the Court on July 31, 2015. Instead of raising the proposed motion to amend the FAC, Plaintiff's counsel agreed that summary judgment motion practice was the appropriate trajectory for this case. The Court also notes that Plaintiff's counsel delayed an additional month after he received the transcripts on August 14, 2015 before informing the Court of his proposed motion on September 15, 2015. *See* DE 28.

Defendant accuses Plaintiff of engaging in "litigation tactics" by waiting until after Defendant indicated its intention to seek summary judgment to move to amend his FAC. Def's. Opp'n. at 8. The Court interprets Defendant's claim as asserting that Plaintiff's motion has been made in bad faith. Plaintiff, however, maintains that "he brought the instant motion as soon as legally permissible" – *i.e.*,

"thirty days after service of transcripts upon Defendant." Pl.'s Reply at 1-2. While the Court finds no evidence of "bad faith . . . [or] dilatory motive" with respect to Plaintiff's proposed amendments, Plaintiff's counsel should have endeavored to inform the Court and Defendant of his intent to amend the FAC sooner than he did. *Balk*, 2013 WL 6990767, at *10.

In addition to a party's diligence, courts can consider other factors under Rule 16(b), such as prejudice to the non-moving party. *Kassner*, 496 F.3d at 244. While the burden of demonstrating "good cause" under Rule 16(b) rests with the movant, "[t]he burden of demonstrating prejudice rests with the non-movant." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Here, Defendant has made virtually no showing of prejudice and does not even address the issue in its opposition. *See generally* Def.'s Opp'n. In particular, Defendant has not refuted Plaintiff's assertion that his Lanham Act claims would require "minimal" additional resources to address because much of the relevant information has already been obtained through discovery and the only issue left to explore is Defendant's intent to deceive consumers. *See* Pl.'s Mem. at 23-24. Further, no trial date has been set. Although the parties have not yet moved for summary judgment, Plaintiff sought permission to file its motion to amend less than two weeks before the September 22, 2015 deadline for Defendant to serve its Rule 56.1 Statement and opening motion papers. It is possible, then, that Defendant may have to revise its Rule 56.1 Statement and other submissions to account for Plaintiff's new claims and, presumptively, some additional evidence. However, the fact remains that no summary judgment motions have been filed and no trial date has been set. Rather, the parties appear poised to commence dispositive motion practice and complete the pre-trial stage of these proceedings.

Ultimately, however, "the absence of prejudice alone is insufficient for a finding of good cause under Rule 16(b)." *Chrebet*, 2014 WL 1836835, at *16 (quoting *Hernandez*, 2013 WL 1703529, at *2)

(citing *Shemendera v. First Niagara Bank N.A.*, 12–CV–178, 288 F.R.D. 251, 252 (W.D.N.Y. Dec. 27, 2012) ("*Kassner* does not excuse the moving party from having to demonstrate diligence in order to show 'good case'" (collecting cases)); *Estate of Ratcliffe v. Pradera Realty Co.*, No. 05–CV–10272, 2007 WL 3084977, at *4 (S.D.N.Y. Oct. 19, 2007) (explaining that the absence of prejudice does not fulfill the good cause requirement of Rule 16(b)). Moreover, the determination whether to grant leave to amend "is within the Court's discretion[] taking into account the totality of the circumstances." *Balk*, 2013 WL 6990767, at *9. For the reasons discussed, the Court finds that Plaintiff has failed to demonstrate the requisite diligence for this Court to find "good cause" under Rule 16(b) to modify the CMSO and permit Plaintiff to amend the FAC.

### B.    Futility Under Rule 15(a)

Since the Court concludes that Plaintiff has not established good cause for failing to comply with the deadline to amend the pleadings, the Court generally need not address whether Plaintiff is entitled to leave to amend under Rule 15(a) or Defendant's argument that Plaintiff's Lanham Act claims would be futile. *See, e.g.*, *Chrebet*, 2014 WL 1836835, at *21 (citing *Field Day, LLC v. Cnty. of Suffolk*, No. 04-CV-2202, 2013 WL 55697, at *2 (E.D.N.Y. Jan 3, 2013) (holding that party "must first satisfy the 'good cause' standard under Rule 16 before an analysis under Rule 15 is conducted"); *Point 4 Data Corp. v. Tri–State Surgical Supply & Equip., Ltd.*, No. 11–CV–726, 2012 WL 2458060, at *5 (E.D.N.Y. June 27, 2012), *aff'd*, 2012 WL 3306612 (E.D.N.Y. Aug. 13, 2012) ("If the party seeking the amendment satisfies the 'good cause' standard of Rule 16, the court then determines whether the movant also meets the liberal standards of Rule 15."). However, in an exercise of its discretion, the Court will address Defendant's argument that Plaintiff's false designation of origin and false advertising claims are futile in light of the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *See* Def.'s Opp'n at 19-21.

Section 43(a) provides, in relevant part, that:

>   (a) (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

>   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

>   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  As discussed, this section has been understood as prohibiting misrepresentations regarding the source of a product in three types of activities:  (1) false advertising; (2) "'passing off' (also called 'palming off') in which 'A' sells its product under 'B's' name;" and (3) "'reverse passing off,' in which 'A' sells 'B's' product under 'A's' name."  *Waldman Publ'g Corp.*, 43 F.3d at 780; *see, e.g.*, *Genometrica*, 2013 WL 394892, at *9.

The Supreme Court made clear in *Dastar* that Section 43(a) of the Lanham Act protects only "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods."  *Dastar*, 539 U.S. at 37.  In *Dastar*, Twentieth Century Fox Film Corporation ("Fox") produced a television series called "Crusades in Europe" based on a book written by General Eisenhower.  *Id.* at 25-26.  Fox copyrighted the work in 1948, but did not renew the copyright when it expired.  *Id.* at 26.  In 1995, Dastar Corporation ("Dastar") purchased tapes of the 1948 series, copied them, edited them, renamed the series, and then resold the final product as its own.  *Id.* at 26-27.

The Supreme Court held that Dastar's sale of the series, "without proper credit," to Fox did not violate the prohibition against false designation of origin under section 43(a) of the Lanham Act. *Id.* 27-28. The Court wrote:

> [T]he most natural understanding of the "origin" of "goods"--the source of wares--is the producer of the tangible product sold in the marketplace.... [A]s used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

*Id.* at 32. In reaching this conclusion, the Supreme Court admonished that Section 43(a) of the Lanham Act cannot be invoked as an end run around the copyright laws or to add another layer of protection to copyright holders. *Id.* at 33–34 ("[I]n construing the Lanham Act, we have been careful to caution against the misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright." (quotation marks and citation omitted)). The Lanham Act was "not designed to protect originality or creativity"—that is the province of copyright. *Id.* at 37. Thus, the Supreme Court held that where the good in question is "a communicative product . . . such as a book or . . . a video," the term "origin" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 33.

"Since *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been 'clearly foreclosed.'" *Hudson v. Universal Studios, Inc.*, No. 04-CV-6997, 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010) ("Because the factual underpinnings of Hudson's Lanham Act claim are identical to those of his copyright claim, the Lanham Act claim must fail.") (quoting *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F .Supp. 2d 120, 129 (S.D.N.Y. 2008)); *see, e.g.*, *Cooley v. Penguin Grp. (USA) Inc.*, 31 F. Supp. 3d 599, 613 (S.D.N.Y. 2014), *as corrected* (July 14, 2014) (holding that under *Dastar*, the plaintiff author of sculptures had no

false designation of origin claim based upon the defendant's "reproduction of the sculptures without proper attribution"); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011) (holding that the plaintiff's false representation of affiliation and false advertising claims based on failure to attribute authorship of photographs to the plaintiff were barred by *Dastar*); *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) (holding that *Dastar* barred the plaintiff's Lanham Act claims based on "the defendants' use of the "Marvel" designation on the Ghost Rider products because, after *Dastar*, Section 43(a) of the Lanham Act "does not . . . cover misrepresentations about the author of an idea, concept, or communication embodied in those goods"); *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007) (noting that *Dastar* held that "the author of ideas that are reproduced in tangible products such as films and books is not the "origin of goods" within the meaning of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)," and "[a]s a result, such an author may not claim that the producer of the tangible product, by reproducing the author's ideas without proper attribution, has committed an actionable "'false designation of origin.'"); *Smith v. New Line Cinema*, No. 03-CV-5274, 2004 WL 2049232, at *3–4 (S.D.N.Y. Sept. 13, 2004) (dismissing Lanham Act claim and holding that "[i]n light of *Dastar*, Smith, as the alleged author of the screenplay embodied in the tangible good offered for sale, is not the originator of the film").

This Court likewise finds that Plaintiff's proposed Lanham Act claims for false designation of origin and false advertising "have been clearly foreclosed" by *Dastar* and its progeny. *Hudson*, 2008 WL 4701488, at *8. With respect to false designation of origin, the PSAC alleges that Defendant engaged in "reverse passing off" by "falsely designat[ing] the Infringing Work as having been authored by non-party Christopher Cameron." PSAC ¶ 46. However, *Dastar* instructs that Plaintiff, as the author of the Copyrighted Work, cannot recover under the Lanham Act against Defendant, the producer of the

Infringing Work, for "reproducing the author's ideas without proper attribution." *Silverstein*, 522 F.

Supp. 2d at 601; *see, e.g.*, *Agence France Presse*, 769 F. Supp. 2d at 307 (for "communicative products

protected by copyright, false designation of authorship is not cognizable under section 43(a)(1)(A) after

*Dastar*") (internal quotation marks omitted).  Plaintiff also cannot bring a Lanham Act claim based on

Defendant allegedly "passing off" the Infringing Work as having been authored by Plaintiff.  PSAC

¶ 56-67; *see Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 538 (E.D.N.Y. 2015), *appeal*

*withdrawn* (Feb. 19, 2016) ("Plaintiffs quibble that *Dastar* dealt only with reverse passing off, but that is

incorrect.  The Supreme Court construed the phrase 'origin of goods,' a concept implicated whether

plaintiffs claim that Merkos passed off its own goods as Vaad's (passing off), or misappropriated goods

belonging to Vaad and passed them off as its own (reverse passing off).") (citing *Dastar*, 539 U.S. at 32

(defining passing off and reversing passing off)); *see generally Thomas Publ'g Co., LLC v. Tech.*

*Evaluation Centers, Inc.*, No. 06-CV-14212, 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007)

("Because Plaintiff's False Designation Claim centers around its contention that it originated certain

ideas and concepts contained at Defendant's website, Plaintiff's claim is dismissed.").  As the Supreme

Court discussed in *Dastar*, since Plaintiff holds a copyright for the Copyrighted Work, "his recourse for

unauthorized copying, . . . lies in copyright law, not in trademark." *Agence France Presse*, 769 F. Supp.

2d at 307–08.  For these reasons, the PSAC does not state a claim for false designation of origin by

"reverse passing off" or "passing off" under Section 43(a)(1)(A) of the Lanham Act.

The same analysis applies to Plaintiff's proposed false advertising claim.  *See Invista S.a.r.l. v.*

*E.I. Du Pont De Nemours & Co.*, No. 08-CV-7270, 2008 WL 4865208, at *4 (S.D.N.Y. Nov. 3, 2008).

Courts in this Circuit are in agreement that "[t]he holding in *Dastar* that the word 'origin' in 43(a)(1)(A)

refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, and

qualities' in 43(a)(1)(B) cannot be read to refer to authorship.  If authorship were a 'characteristic' or

'quality' of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)." *Thomas Publ'g*, 2007 WL 2193964, at *3 (quoting *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394 (S.D.N.Y. 2006) (internal quotation marks and alterations omitted)); *see, e.g.*, *Agence France Presse*, 769 F. Supp. 2d at 308; *Invista S.a.r.l.*, 2008 WL 4865208, at *4.

Here, Plaintiff's proposed false advertising claim is premised on the assertion that Defendant, *inter alia*, misappropriated his and other person's articles and "designat[ed] those misappropriations as authored by Defendant[] and . . . posted the misappropriated articles on its website therealdeal.com[.]" PSAC ¶ 66(a), (c). However, "a failure to attribute authorship to Plaintiff does not amount to misrepresentation of 'the nature, characteristics, qualities, or geographic origin of . . . Defendant's goods.'" *Thomas Publ'g*, 2007 WL 2193964, at *3 (quoting 15 U.S.C. § 1125(a)(1)(A)) (dismissing false advertising claim "premised upon the assertion that Defendant passed off Plaintiff's work as its own," where defendant misrepresented itself as the developer, creator or owner of materials comprising a software directory). "The import of *Dastar* that an author's recourse for unauthorized use is in copyright cannot be avoided by shoe-horning a claim into section 43(a)(1)(B) [for false advertising] rather than 43(a)(1)(A) [for false designation of origin]." *Agence France Presse*, 769 F. Supp. 2d at 308 (dismissing false advertising claim that is premised on [the defendant's] false statements that they were authorized to distribute the images and that Suero was the author"); *Invista S.a.r.l.*, 2008 WL 4865208, at *4 ("None of Invista's allegations relate to the 'nature, characteristics [or] qualities' of Rhodia's ADN or the process by which it manufactures the ADN. These allegations reduce to Rhodia's alleged passing off of Invista's work—its Gen I technology—as Rhodia's own. *Dastar* bars such a claim, however it is framed. As a result, Invista's false advertising claim is dismissed."). Accordingly, the PSAC does not state a claim for false advertising under Section 43(a)(1)(B) of the Lanham Act.

Based on the foregoing factors, the Court finds Defendant has established that the claims Plaintiff seeks to add to the FAC for false designation of origin and false advertising under Section 43(a) of the Lanham Act would not withstand a dispositive pretrial motion to dismiss and that the proposed amendments are therefore futile. *See Themis Capital*, 2013 WL 1687198, at *6; *Cummings-Fowler*, 282 F.R.D. at 296. Thus, the futility of Plaintiff's proposed amendments provides additional grounds for the Court to deny Plaintiff's motion to amend the FAC here.

## V.    CONCLUSION

Based on the foregoing analysis, Plaintiff's motion to amend the FAC is DENIED.

The Court presumes that one or both of the parties still intends to move for summary judgment. *See* DE 26. If that is the case, the parties are to adhere to the following briefing schedule.

- Movant's motion papers, Rule 56.1 Statement of Undisputed Facts, and Memorandum of Law must be served by November 11, 2016;

- Opposing counsel's opposition papers, Rule 56.1 Counterstatement, and Memorandum of Law must be served by December 16, 2016;

- Movant's reply papers, if any, must be served by December 30, 2016.

The parties are reminded to comply with the Court's "bundle rule" by filing the motion on ECF once it is fully briefed.

**SO ORDERED.**

Dated: Central Islip, New York
       October 4, 2016

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge