UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW M. LIEB,

                                Plaintiff,          **MEMORANDUM**
                                               **AND ORDER**
           -against-                   CV 15-0040 (AYS)

KORANGY PUBLISHING, INC.
(d/b/a/ THE REAL DEAL),

                                Defendant.
-------------------------------------------------------------X
APPEARANCES:

LIEB AT LAW, P.C.
BY:   DENNIS C. VALET, ESQ.
308 West Main Street
Smithtown, NY 11787
Attorneys for Plaintiff

FRIEDBERG PLLC
BY:   BARRY J. FRIEDBERG, ESQ.
200 Park Avenue South, Suite 1700
New York, NY 10166
Attorneys for Defendants

FISH & RICHARDSON P.C.
By:   KRISTEN McCALLION, ESQ.
7 Times Square Suite 20
New York, NY 10036
Attorneys for Defendants

**SHIELDS, Magistrate Judge:**

      Plaintiff, Andrew Lieb ("Plaintiff" or "Lieb"), is an attorney who handles real estate

matters. He is also an independent contractor blogger. This litigation arises out of articles

authored by Lieb that he arranged to have posted, first in an online publication known as Dan's

Papers, and then again (with limited revision) in the Huffington Post online publication (the

"HuffPost Article"). Lieb claims that Defendant, Korangy Publishing, Inc. ("Korangy" or

"Defendant"), infringed the copyright held by Plaintiff for the Huffington Post article – Plaintiff holds no copyright protection for the Dan's Papers article. In addition to copyright infringement, Plaintiff claims that Defendant's publication amounts to a deceptive trade practice in violation of Section 349 of the New York State General Business Law ("Section 349" of the "GBL"). (See generally Am. Compl., Docket Entry ("DE") [21].) Presently before the Court are the parties' renewed motions for summary judgment.[1]

For the reasons set forth below, Defendant's motion is granted with respect to the copyright claim to the extent that this matter is referred to the Copyright Office for its advice as to whether it would have granted a copyright for the HuffPost Article if it had known of Lieb's misrepresentation to that office. The motion for summary judgment dismissing the Section 349 claim is granted in full. In view of these rulings, the Plaintiff's motion is denied in its entirety.

## BACKGROUND

I.   Factual Background: Basis of Facts Recited Herein

The facts set forth below are drawn from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"). (See DE [47-1] (Defendant's Rule 56.1 Statement); DE [49-2] (Plaintiff's Rule 56.1 Statement) (collectively the (the "Rule 56.1 Statements").) The facts are undisputed unless otherwise noted. For ease of reference, and to avoid repetition where there is no factual dispute, the Court cites only to Plaintiff's Rule 56.1

---

[1] The parties originally moved for summary judgment in 2016. (See DE [38], [39].) The formerly assigned Magistrate Judge, to whom this matter was assigned for all purposes, denied in part and granted in part Defendant's motion, with an opinion to follow. (DE [43].) This Court was assigned the case on October 25, 2021. After a scheduling conference held on November 1, 2021, counsel were granted the opportunity to re-brief their motions. The presently pending cross-motions for summary judgment, (DE [47] and [49]), were fully briefed on March 14, 2022.

Statement. The Court also considers and refers to documents submitted by the parties. Defendant's documents submitted in support of its motion (Exhibits A-P) are annexed to the Declaration of Barry J. Friedberg, Esq., dated January 31, 2022 (the "Friedberg Decl."). (DE [47-2].) Plaintiff's documents submitted in support of his motion (Exhibits 1-3) are annexed to the Declaration of Dennis C. Valet, Esq. dated February 22, 2022 (the "Valet Decl."). DE [49-3].) Where there is any meaningful discrepancy between the parties' Rule 56.1 Statements, the Court refers to and relies directly upon the underlying documents forming the basis of the parties' statements.

II.   The Parties

Plaintiff is an attorney. He is a real estate lawyer and blogger. (DE [49-2] ¶ 1.) Defendant is the publisher of, among other things, a website devoted to real estate news called "The Real Deal." (DE [49-2] ¶ 2.)

III.   The Online Articles

A.   Lieb's  October 24, 2014 Dan's Papers Article

On October 24, 2014, Lieb published an article on the website of a publication known as Dan's Papers. While Lieb's declaration states the date of this publication as October 24, 2016, (DE [49-4]), it is clear that the date of publication was 2014, and not 2016. In any event, that October 24, 2014 article, referred to herein as the "Dan's Papers Article," was entitled "10 Secrets: What to Do When You Inherit a Hamptons Estate." (Friedberg Decl., Ex. A.) Lieb neither applied for nor obtained a copyright with respect to the Dan's Papers Article. (DE [47-1] ¶ 6; (DE [49-2] ¶ 6; Pl.'s Responses to Def.'s 1st Set of Interrogatories (Friedberg Decl., Ex. J) ¶ 9.) While Plaintiff does not dispute the lack of copyright registration for the Dan's Papers Article, he states that he "granted Dan's Papers a license" to publish his article. (DE [49-2] ¶ 4.)

Lieb received no monetary compensation for publication of the Dan's Papers Article. (DE [49-2] ¶ 5.)

      B.    <u>Lieb's October 31, 2014 Huffington Post Article</u>

      On October 31, 2014, one week after publication of the Dan's Papers Article, Lieb made certain edits thereto and submitted it in the form of a blog post to the Huffington Post online publication. (Friedberg Decl., Ex. C.) That blog post was entitled "10 Surprises when Inheriting Real Estate." (DE [49-2] ¶1.) In the HuffPost Article, Lieb expressly notes that it was "[a]dapted from" the Dan's Papers Article. (Friedberg Decl., Ex. C at 3.) The title of the HuffPost Article removed reference to the Hamptons. (DE [49-2] ¶ 13.) Lieb similarly removed references to "Long Island's East End" and the Hamptons from the body of the HuffPost Article. (DE [49-2] ¶ 14.) He also made other edits when adapting the Dan's Papers Article for publication as the HuffPost Article.

      Plaintiff agrees with Defendant's characterization of the HuffPost Article as set forth in Defendant's Rule 56.1 Statement. However, Plaintiff's Rule 56.1 Statement amplifies Defendant's characterization, stating that the HuffPost Article and the Dan's Papers Article shared the primary purpose of "assembl[ing] and explain[ing] ten (10) legal issues which may be relevant to someone who inherits real estate," and that this "primary purpose" "remained constant between the two articles." (DE [49-2] ¶ 15.) With the exception of differences discussed in further detail below, the HuffPost Article was a verbatim restatement of the Dan's Papers Article. (DE [49-2] ¶ 16.) Like the Dan's Papers Article, Lieb received no monetary compensation for publication of the HuffPost Article. (DE [49-2] ¶ 17.)

      Publication of the HuffPost Article was governed by an agreement between Plaintiff and the Huffington Post, which was agreed to by Lieb, and reflected in an email dated March 26,

2014 – approximately seven months prior to publication of the HuffPost Article. In that email, a representative of the Huffington Post (referred to as the "Huffpost Blogteam") welcomed Lieb to the "HuffPost blogging platform." (DE [47-13] at 10.) Attached to this email is a document entitled "HuffPost Blogger Terms, Guidelines, Tips and FAQ" (the "Blogger Terms"). (Id. at 11.) This document sets forth the terms under which articles are posted to the HuffPost site. Specifically, the Blogger Terms inform Lieb that by submitting posts, he is an independent contractor who is not entitled to any compensation. The email states that bloggers like Lieb own the copyright to any submitted content and that they can post that content anywhere. (Id. at 12.) However, by submitting material to HuffPost, writers grant to HuffPost "a non-exclusive worldwide, royalty-free, irrevocable, perpetual license to exercise all rights under copyright law with respect to such content," which the Huffington Post is free to use in a variety of unrestricted ways. (Id.) In accord with the date of this email, Plaintiff states that he entered into a licensing agreement with HuffPost on March 26, 2014, and not on October 31, 2014 – when he later published an article on the HuffPost site. (DE [42-9] ¶ 7.) The Blogger Terms note that HuffPost allows others accessing articles on its site to make "fair use" of materials published therein. Thus, the license states that bloggers like Lieb can make such fair use of HuffPost content. The Huffington Post is not a party to this lawsuit.

      C.    <u>Defendant's Website and the Article at Issue</u>

         a.    <u>Real Deal Content</u>

           Defendant states that certain content on its Real Deal site are summaries of articles about real estate that appear elsewhere. These posts link to the original source reporting. (DE [49-2] ¶ 18.) Christopher Cameron, one of Defendant's reporters, testified at his deposition that he "aggregates" news for the Real Deal website. (DE [49-6] at 7.) Cameron does not create

original content. Instead, he reads various news articles and websites and identifies content that might be of interest to Real Deal readers. He then summarizes the article, has its copy edited, creates art, and publishes his summary on the Real Deal site. (DE [49-6] at 8-9.) The corporate deposition of Defendant confirms Cameron's description of how certain articles are posted to the Real Deal website. Thus, that deponent stated that Defendant's site publishes articles that are excerpts of content published elsewhere, summarizing the original article in as few words as possible. (DE [49-7] at 13-14.)

   b. <u>Publication of the Real Deal Article</u>

   On November 1, 2014, one day after publication of the HuffPost Article, Defendant published a post entitled "Watch for these 10 surprises when inheriting real estate." (Friedberg Decl., Ex. E; DE [49-2] ¶ 19.) The Court refers to this post as the "Real Deal Article."

   Cameron posted the Real Deal Article to Defendant's website pursuant to his usual duties of summarizing articles of interest to his readers. (DE [49-6] at 15-16.) Thus, Defendant states that it did not reprint or restate the text of the HuffPost Article, but instead, summarized it in "substantially fewer words." (DE [49-2] ¶ 23; DE [49-7] at 21 (agreeing that the Real Deal Article was found from another publication and "summarized in as few words as possible").)

IV. <u>Plaintiff's Copyright Registration</u>

   On November 12, 2014, eleven days after publication of the Real Deal Article, Plaintiff registered a copyright with the United States Copyright Office (the "Copyright Office" or the "USCO") for the HuffPost Article. (Friedberg Decl., Ex. G; DE [49-2] ¶ 24.) The Certificate of Registration for the HuffPost Article states the date of publication as October 31, 2014 (the date of publication of the HuffPost Article). (Friedberg Decl., Ex. G.) Neither the Dan's Papers Article nor its date of publication are referred to in the copyright registration for the HuffPost

Article. (<u>See</u> <u>id.</u>) Plaintiff agrees that he never sought copyright protection for the Dan's Papers Article. (DE [49-2] ¶ 25.) Nor did he disclose the Dan's Papers Article to the Copyright Office in any way.

V.     <u>Defense Counsel Alerts Plaintiff's Counsel of Derivative Nature of The HuffPost Article</u>

On December 10, 2014, prior to initiation of this lawsuit, and in apparent response to a demand for payment, Defense counsel wrote to Plaintiff's counsel (who appears to be a law partner or associate of Plaintiff Lieb) stating Defendant's position that there had been no infringement. (DE [48-3].) That letter is annexed to the Friedberg Declaration. (<u>Id.</u>) It advised Plaintiff's counsel that the HuffPost Article was a derivative work of the Dan's Papers Article, and that, therefore, the certificate of registration for the HuffPost Article was invalid. (<u>Id.</u>) Plaintiff's counsel refers to an apparently different letter he received on August 13, 2015, which he states sets forth the same information – although more than a year later (and after initiation of this lawsuit). This letter is not, however, attached to counsel's declaration. (DE [49-3]; Valet Decl. ¶ 7.) In any event, counsel states that it was not until he received this communication that he and Lieb first became aware of any argument that the Dan's Papers Article should have been registered instead of the HuffPost Article. (<u>Id.</u>) Similarly, in his declaration submitted in support of his cross-motion, Lieb states: "I do not practice copyright law and have no knowledge of copyright law or its intricacies beyond a layman's understanding. (DE [49-4] ¶19.) Lieb further states that when he registered the HuffPost Article with the Copyright Office, he was "not acting as an attorney, but as an individual" on his own behalf. (<u>Id.</u>) There is no indication that Plaintiff or Valet have ever made any attempt to contact the Copyright Office to discuss the issue of whether the HuffPost Article was, indeed, derivative of the Dan's Papers Article. Nor is there

any document showing any supplementary registration for the HuffPost Article, or copyright registration of the Dan's Papers Article.

VI.    Comparison of the Articles

The parties have submitted exhibits highlighting the exact similarities and differences among the three articles described above (collectively, the "Articles") for the Court's review. (See e.g., Friedberg Decl., Ex. D.) As noted, Defendant characterizes its article as a summary of the HuffPost Article. Plaintiff disputes Defendant's characterization and instead refers to the Real Deal article as plagiarism. Specifically, Plaintiff states that Defendant copied the HuffPost Article, maintaining its content and order of the "top 10" style list, attempting to shorten or reword Lieb's explanation of the legal topics and content chosen by Lieb. (DE [49-2] ¶ 18.) Plaintiff states that the Real Deal Article fails to introduce any new legal concepts or analysis, and that its substantive material is taken directly from the HuffPost Article. (DE [49-2] ¶ 23.)

Plaintiff's papers engage in counting the number of words in each article; an exercise in which the Court does not similarly engage and does not find particularly helpful in this case. Instead of relying on the parties' exhibits, lists, and word counts, and in view of the fact that the Articles are relatively short pieces, the Court relies only on the actual source material. The Court's own review and comparison of the Articles follows.

A.    Similarities Among the Three Articles

The Articles are similar in many respects. No party disputes this. All three are written in a "top 10 list" format. All refer to legal matters associated with the inheritance of real estate. These legal concepts are the same and appear in the same order. Those top ten concepts are:

- Mortgage Transfer

- Reverse Mortgage

- Rental

- Homeowners Insurance

- Testamentary Substitutes

- Estate Tax

- Capital Gains Tax

- Probate

- Heirs at Law

- Right of Election

Following each of these subject headings, the Articles discuss certain scenarios as to how each matter may arise in the real estate inheritance context. The Court turns first to compare the Dan's Papers Article to the HuffPost Article. Both were authored by Lieb. They are, as discussed below, nearly identical.

B.    Comparison of the Dan's Papers Article to the HuffPost Article

The Court's review leads to the conclusion that the HuffPost Article is virtually identical to the Dan's Papers Article. They contain the same top ten list of legal concepts, listed in the same order, with the same information. Both of Lieb's articles contain a "Bonus Concept" advising against making a premature decision to sell inherited real estate. The only difference between Plaintiff's two articles is that the HuffPost Article deletes references to Long Island and/or the Hamptons, replacing them with references to real estate in general. Additionally, the HuffPost Article notes that it was based upon New York law and advises readers to check applicable state law. (Friedberg Decl., Ex. D; DE [47-6] at 4.) The HuffPost Article notes that it was adapted from a Dan's Papers blog post and links to that article. Both articles identify Lieb as

9

the author. The Dan's Papers Article describes Lieb as the managing attorney of Lieb at Law, P.C. and a "contributing writer for Behind the Hedges: inside Hamptons Real Estate." (DE [47-3] at 4.) The HuffPost Article also identifies Lieb as the managing attorney of Lieb at Law, P.C. Additionally, it identifies him as "Founder, the Lieb School." (DE [47-5] at 1.)

      C.    <u>Comparison of the HuffPost Article to the Real Deal Article.</u>

      The HuffPost Article is the only article for which copyright registration was obtained, and it therefore forms the only basis for Plaintiff's claim of infringement. Because it is virtually identical to the Dan's Papers Article, the Court compares only Lieb's HuffPost Article to Defendant's Real Deal Article. The Court's conclusions herein would not change if it went through the additional exercise of comparing the Dan's Papers Article with the Real Deal Article. The Court's independent review follows.

      Both the HuffPost and the Real Deal Articles are written in a common "top ten" format. Both use the word "surprises" and the short phrase "inheriting real estate" in their titles. Thus, the HuffPost Article is entitled: "10 Surprises When Inheriting Real Estate." The Real Deal Article is entitled "watch for these 10 surprises when inheriting real estate."

      It is not disputed that the Real Deal Article refers to the HuffPost Article in three places and contains a hyperlink that links directly to the HuffPost Article. (DE [49-2] ¶ 21-22.) While Plaintiff agrees that the Real Deal Article refers to and contains a hyperlink to his HuffPost Article, he emphasizes that his name is not stated as the author of the linked article. Further, despite the presence of a hyperlink, Plaintiff states that the HuffPost Article does not make clear that the reader may link to his HuffPost Article by clicking on the link. (<u>Id.</u>)

      As to differences between the Real Deal Article and the HuffPost Article, the HuffPost Article contains full, detailed paragraphs explaining the legal concepts under each of the top ten

subheadings. In contrast, Defendant's Real Deal Article uses different and far less language under each subheading, consisting of one to three sentences for each subject. The HuffPost Article is three and one half pages long; the Real Deal Article is a single page. The HuffPost Article contains references to New York and Federal law. The Real Deal Article, while referring to legal concepts, contains no references to any law – federal or state. The HuffPost Article includes a "Bonus Concept;" the Real Deal Article does not. It is clear that the Real Deal Article is a very brief and more generalized summary of the legal concepts discussed at greater length in the HuffPost Article. Consistent with such a summary, the Real Deal Article characterizes itself as a "roundup of the 10 most common headaches real estate heirs face via the Huffington Post." (DE [47-7].)

VII.    The Cross-Motions for Summary Judgment

Defendant moves for summary judgment as to all claims. The copyright claim is sought to be dismissed first on the ground that when registering a copyright for the HuffPost Article, Plaintiff made a material representation to the Copyright Office. This misrepresentation – the failure to disclose the earlier publication of the Dan's Papers Article (which is essentially identical to the HuffPost Article) – is argued to constitute knowingly making an inaccurate statement to the USCO, which requires referral of Lieb's registration back to the Copyright Office for its advice as to the validity of Plaintiff's registration.

Summary judgment as to the copyright claim is also sought on the merits, on the ground that the Real Deal Article lacks the requisite substantial similarity (within the meaning of the copyright law) to the HuffPost Article. In support of this argument, Defendant argues that it has copied no protected material. As to protected material, Defendant notes, inter alia, that short phrases (including titles) and common themes such as the use of a "top ten" format are not

copyrightable. Nor, for that matter, are the legal concepts in any of Lieb's articles subject to copyright protection. Defendant also argues that when such clearly non-copyrightable material is excluded from the HuffPost Article, it becomes clear that there has been no infringement. In addition to seeking summary judgment as to the copyright claim, Defendant seeks summary judgment dismissing Plaintiffs GBL Section 349 claim on the grounds of preemption and failure to state a claim.

Plaintiff cross-moves for summary judgment, arguing that the HuffPost Article was properly registered, and that the Real Deal Article infringes on Plaintiff's work. Plaintiff also disagrees with Defendant's positions regarding his claim under Section 349.

Having summarized the facts and the parties' positions as to their motions, the Court turns to the merits thereof.

DISCUSSION

I.    Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008)). A fact is "material" if it might affect the outcome of the litigation under the relevant law. SCR Joint Venture, 559 F.3d at 137 (citation omitted). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. See Celotex, 477 U.S. at 322.

Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court "must resolve all ambiguities and draw all reasonable inferences against the moving party." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, see Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in its favor. Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)).

II.     General Principles of Copyright Law

    A.     Protection in Literary Works and Derivative Works

Copyright protection subsists in original works of authorship including literary works. See 17 U.S.C. § 102(a)(1). The copyright laws are limited in that they expressly do not extend protection to any idea, regardless of the form in which it is described, explained or embodied in such work. See 17 U.S.C. §102(b). The law also speaks directly to the limited nature of copyright in works that are based upon earlier published works, or those based upon work existing in the public domain. A work based upon such earlier material may be deemed "derivative work," which is defined to include "a work based upon one or more preexisting

13

works" including a "work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. §101. While such works that are "derivative" of earlier works may be registered, the copyright in those works extends only to new material and "does not imply any exclusive right in the preexisting material." 17 U.S.C. §103(b).

      B.     <u>Prerequisites to Suit and Elements of Infringement</u>

      "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co, Inc.</u>, 499 U.S. 340, 361 (1991) (citing <u>Harper & Row, Publ'rs, Inc. v. Nation Enters.</u>, 471 U.S. 539, 548 (1985)). While a copyright in a literary work may exist without prior registration, registration is a prerequisite to commencement of a suit for infringement. <u>See</u> 17 U.S.C. § 411(a). Registration is also necessary to obtain an award of damages or attorney's fees for infringement that occurred prior to registration. <u>See</u> 17 U.S.C. § 412; <u>see also</u> <u>Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.</u>, _ U.S. _, 142 S. Ct. 941, 944-45 (2022). Registration of a copyright is <u>prima facie</u> evidence of ownership of a valid copyright. <u>See</u> 17 U.S.C. 410(c); <u>see also</u> <u>Gayle v. Villamarin</u>, 18 Civ. 6025, 2021 WL 2828578, at *3 (S.D.N.Y. July 7, 2021). The presumption of validity may, however, be rebutted by the alleged infringer. <u>See</u> <u>Gayle</u>, 2021 WL 2828578, at *3 (citing <u>Scholz Design, Inc. v. Sard Custom Homes, LLC</u>, 691 F.3d 182, 186 (2d Cir. 2012)).

      C.     <u>Substantial Similarity</u>

      Even assuming validity of a copyright, a work will infringe on copyrighted work only if it bears substantial similarity to the protected work. Determining substantial similarity requires comparing the works at issue to examine, <u>inter alia</u>, protectable elements of plaintiff's

work, not simply whether they are similar in a lay person's meaning of the term. See Clanton v. UMG Recordings, Inc., No. 20-cv-5841, 2021 WL 3621784, at *5 (S.D.N.Y. Aug. 16, 2021). Importantly, works containing "both protectible and unprotectible" material must be examined to attempt to "extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." Id. (quoting Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 66 (2d Cir. 2010)).

Among those materials generally held to be unprotectible are words and short phrases. Such material is "rarely if ever" sufficiently original to warrant copyright protection. Clanton, 2021 WL 3621784, at *6 (citing McDonald v. West, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015)) (additional citation omitted). Indeed, the relevant regulation listing material not entitled to copyright protection includes "words and short phrases such as names, titles, and slogans," and works consisting entirely of information that is "common property containing no original authorship." 37 C.F.R. § 202.1(a). Moreover, the use of words in a wholly functional manner to convey a common idea does not amount to language entitled to the protection of the copyright law. See Clanton, 2021 WL 3621784, at * 6.

III.   Defendant's Motion for Summary Judgment as to the Copyright Claim

Defendant seeks summary judgment as to Plaintiff's copyright claim on the grounds that: (1) the Real Deal Article lacks the required substantial similarity to the HuffPost Article to constitute infringement, and (2) Lieb's failure to disclose the Dan's Papers Article in his copyright registration for the HuffPost Article is a misrepresentation requiring referral back to the USCO so that it can advise the Court as to whether knowledge of this misrepresentation would have caused it to refuse registration. Because the latter argument is a threshold matter, the Court addresses it first.

15

IV.    Motion to Refer Lieb's Registration to the Copyright Office: Background

In support of its motion, Defendant argues that Plaintiff was required to disclose the Dan's Papers Article as a prior published work. Lieb's knowing failure to disclose this prior work is argued to have resulted in improper registration of the HuffPost Article as an original literary work, and not as what it is – a derivative work. The Court has outlined above the legal definition of a derivative work. Before determining the issue of whether referral for the advice of the Copyright Office is required, the Court outlines certain USCO forms and pertinent sections of a manual promulgated by that office. That manual, which exists in several editions, but is the same in the areas relevant here, is the Compendium of U.S. Copyright Practices (the "Compendium"). All of these documents are annexed to Defendant's motion. They refer to the registration of unpublished literary works, as well as those that are derivative of earlier published work. These materials are readily available to all who seek to register copyrights – lawyers and non-lawyers alike. They are discussed herein to provide the proper backdrop to Defendant's motion, and in particular, to determining the issues of whether Lieb knowingly presented inaccurate information in his application to register a copyright for the HuffPost Article, and whether the Copyright Office would have refused registration if accurate information were presented.

A.    Forms Explaining How to Register a Copyright

To obtain registration of a literary work, an author must submit a copy of their work along with an application that provides information about the work. See 17 U.S.C. § 408-09. The Register of Copyrights reviews the application and, if appropriate, issues a certificate of registration reflecting the information provided by the applicant. See 17 U.S.C. § 410. To aid

applicants in the registration process, the Copyright Office provides various forms, which include directions.

Since not all applicants are lawyers – or, as alleged here, not copyright lawyers – the Court assumes that the instructions and definitions provided by the USCO reflect the best intentions of that office to inform the public as to the rules of registration. The Court's own review of those instructions bear out this assumption. There are undoubtedly laws and rules relating to copyright registration that are complicated. The instructions pertinent here, which relate to the disclosure of prior work and limitation of claims of copyright, are relatively simple. They explain the relationship between previously published works and derivative works. These documents are available online at the USCO website located at www.copyright.gov. They are properly before the Court, and appear as Exhibits M, N, O and P to the Friedberg Declaration.

Exhibit M to the Friedberg Declaration is "Form TX," which is the form to submit to the Copyright Office for registration of a single non-dramatic literary work – the category applicable to the HuffPost Article. (Friedberg Decl., Ex. M.) Exhibits N and O contain relevant pages of the second and third editions of the Compendium. The second edition of the Compendium, annexed as Exhibit N to the Friedberg Declaration, was in effect until December 2014 (during the time when Lieb registered his copyright). (Friedberg Decl., Ex. N.) The third edition of the Compendium is annexed as Exhibit O to the Friedberg Declaration. This version was in effect from December 22, 2014 through September 29, 2017. (Friedberg Decl., Ex. O.) Newer versions of the Compendium were released in 2017 and 2021 and are available online. (DE [47-19] at n. 1.) All versions of the Compendium are consistent and clear with respect to disclosure of prior work, and their explanations of what constitutes derivative work. Finally, Exhibit P to the

Friedberg Declaration is the Copyright Office's "help" page with respect to limitation of claims (the "Help Page"). (Friedberg Decl., Ex. P.)

All of these documents give the public clear, basic information as to registering and properly limiting their claims of copyright. All are accessible to the public at the Copyright Office website, found at https://copyright.gov. The ease of understanding these forms and their clear applicability to the circumstances here make a detailed discussion important and relevant to consideration and determination of Defendant's motion. The Court turns to that discussion.

1.    Form TX

Form TX is a three-page form. Annexed to Form TX are two pages of detailed instructions. The instructions are divided by sections corresponding to the form. Sections 5 and 6 of Form TX are the sections that would likely be the focus of a blogger like Lieb. Section 5 of Form TX asks whether the work to be registered or an earlier version thereof has already been registered with the Copyright Office. (DE [47-15] at 4.) If the answer to this question is no, the registrant moves on to Section 6. That section asks the applicant to identify any "Derivative Work or Compilation." The form itself instructs the registrant to identify any "preexisting material," stating that the registrant must "[i]dentify any preexisting work or works that this work is based on or incorporates." (DE [47-15] at 4 (emphasis added).) Form TX cautions – on the form itself – the applicant to "[s]ee instructions before completing this space." (Id.) The instruction for completing Section 6 of Form TX contains a short paragraph entitled "General Instructions." This paragraph instructs the applicant to complete Section 6 if the work to be registered is, inter alia, a derivative work or a "changed version" of any earlier work that has already been published. (DE [47-15] at 2 (emphasis added).) Derivative work is defined for the applicant to include "works consisting of editorial revisions, annotations or other

18

modifications," if these changes, as a whole, represent an original work of authorship. (Id.
(emphasis added).) Where the applicant identifies the work for which registration is sought as a
derivative work, the applicant is instructed to complete Section 6(a) which requires identification
of "preexisting work that has been recast, transformed, or adapted." (DE [47-15] at 2 (emphasis
added.) Such preexisting material includes previously registered material, as well as material for
which no protection has been sought. The remainder of Section 6 (Section 6(b)) is where the
applicant identifies material added to the work for which registration is sought.

        2.    The Compendium

        As set forth by the Copyright Office, the Compendium "is the
administrative manual of the Register of Copyrights concerning the Copyright Act and
regulations promulgated thereunder." It "provides instruction to agency staff regarding their
statutory duties and provides expert guidance to copyright applicants, practitioners, scholars, the
courts, and members of the general public regarding institutional practices and related principles
of law." https://www.copyright.gov/comp3/docs/introduction.pdf.   The versions of the
Compendium annexed to the Friedberg Declaration are identical with respect to the issue raised
herein. As noted, the current version appears in an easily accessible and searchable online
version. The Compendium is described by the Copyright Office as "the governing administrative
manual for registrations and recordations issued by the Copyright Office."
https://www.copyright.gov/comp3/docs/introduction.pdf. The Compendium "documents and
explains the many technical requirements, regulations, and legal interpretations of the U.S.
Copyright Office with a primary focus on the registration of copyright claims, documentation of
copyright ownership, and recordation of copyright documents."
https://www.copyright.gov/comp3/docs/introduction.pdf.

While the Compendium is intended as a guide to the USCO staff and the public, it has also been cited and relied upon by Courts deciding copyright cases. <u>See</u> Compendium at 2. Thus, as recognized by Defendant and the Copyright Office, Courts have often cited the Compendium in copyright cases. <u>See, e.g., Olem Shoe Corp. v. Washington Shoe Corp.</u>, 591 Fed. App'x. 873, 882 n.10 (11th Cir. 2015) (stating that the Compendium's construction of the Copyright Act's requirements for disclaiming preexisting works during registration "merits deference"); <u>see also</u> Compendium at 2. This reference to the Compendium is consistent with Supreme Court precedent recognizing the persuasive power of administrative manuals. <u>See</u> <u>Georgia v. Public.Resource.Org, Inc.</u>, _ U.S. _, 140 S. Ct. 1498, 1510 (2020) (applying "power to persuade" standard to the Compendium). Although the Compendium is a lengthy document, the website where it is found is searchable and its table of contents allows the reader to easily locate and navigate to relevant sections.

Like Form TX, the Compendium speaks to derivative works. It defines a derivative work as a "<u>a work based upon one or more preexisting works . . . in which a work may be recast, transformed, or adapted</u>." Compendium § 507.1 (emphasis added). This includes works that consist of "<u>editorial revisions, annotations, elaborations, or other modifications . . . .</u>" <u>Id.</u> (emphasis added). This definition is quoted directly from the definition of derivative work set forth in the Copyright Law at 17 U.S.C. §101. The Compendium provides examples of derivative works including a <u>revision of the "text on a website</u>." Compendium § 507.1 (emphasis added). Derivative works are described as often containing previously published material that might contain new information for which copyright registration is sought. <u>Id.</u>

Section 618 of the Compendium discusses the proper assertion of a claim of copyright. <u>See</u> <u>generally</u> Compendium § 618. Section 618.2 speaks clearly to limiting copyright registration

to exclude material that may not appear in the registered work including, in particular "previously published material." Id. (emphasis added). Section 618.5 refers to the Copyright Act's definition of derivative works and makes clear how to disclaim such material from a copyright registration. As an example, the Compendium notes that derivative works "often contain previously published material. Compendium § 618.5 (emphasis added). Section 618 of the Compendium refers the registrant to Section 621 for specific information regarding the registration of a derivative work. That section of the Compendium again advises the applicant that their registration must be limited to exclude from their claim work that was previously published. Like other materials, this section of the Compendium again specifically defines "unclaimable material" as "previously published material." Compendium § 621.1 (emphasis added).

Where a work is derivative of another, the copyright registrant must generally limit their claim only to new material. If a comparison between previously published work and the work sought to be registered is de minimus, the claim of copyright will be denied, because such small revisions present no original copyrightable work. See Compendium § 619.06(d); see also Compendium § 202.02(a) (noting that works that lack "even a certain amount of original authorship are not copyrightable"). An example of how to properly disclaim previously published material by the same author appears in the Compendium. That example describes how to register a copyright for a new edition of an author's previously published work. Thus, the Compendium describes a scenario where an author seeks to register a copyright for a second edition of a book that contains an appreciable amount of material contained in the first edition of the same book. There, the proper course for registration of the second edition is to register the copyright for that edition, while also disclaiming copyright in the first edition. See Compendium

§ 621.1. Earlier versions of works sought to be registered need not be disclaimed, however, if the earlier version(s) thereof were not published. See Compendium § 621.8. However, the date of the earlier publication and its proximity to the date of publication of material sought to be registered makes no difference when it comes to disclaiming earlier work. Thus, even if the earlier publication occurred one week before publication of the material for which registration is sought, the earlier published material must be disclosed as limiting the registration. See Compendium § 621.4 (noting that "if the applicant intends to register a work that contains an appreciable amount of material that was published at any time before the application is submitted, the applicant should exclude that previously published material from the claim") (emphasis added).

Section 621.4 of the Compendium speaks to reasons why the Copyright Office requires disclaiming previously published material. Thus, the Compendium states that the USCO "requires applicants to disclaim previously published material for several reasons. In particular, this information may be needed to determine:

- The length of the copyright term.

- Whether the relevant deposit requirements have been satisfied.

- Whether the certificate of registration is entitled to certain legal presumptions.

- Whether the copyright owner is entitled to certain legal remedies in an infringement dispute.

- Whether an infringer may rely on certain defenses in an infringement dispute."

Compendium § 621.4. The Copyright Office also notes that requiring the disclaimer of previously published works "encourages early registration and promotes administrative efficiency." Id.

Section 621.4 of the Compendium refers the reader, in easily navigable form, to Section 500 of that document. There, in a clearly drawn example under a section entitled "Unclaimable

Material: Previously Published Material," the Compendium explains, in the form of a chart, how an author may claim copyright protection for new material added to a previous publication. That chart explains that an "applicant may register the new text that the author contributed to the second edition of this textbook." But the author is directed to "exclude the text, artwork, and other material that was published in the first edition of this work." Compendium § 503.5(A). This Section also clearly refers the applicant back to Section 600 for essentially the same discussion found in Section 503.5(A) and directs the applicant to use the procedure described in Chapter 600, set forth above.

            3.    Copyright Office's "Help" Page Regarding Limitation of Claims

            The final public Copyright Office document submitted by Defendant that discusses derivative works is the "Help Page," which gives registrants additional information regarding filing. Relevant here is the information on the Help Page regarding limitation of claims to copyrightable material and derivative works. Like the material discussed above, the Help Page refers to derivative works and incudes the same definitions above, including reference to works that incorporate one or more preexisting works. (DE [47-18] at 1.) Consistent with Form TX and the Compendium, the Help Page advises registrants to exclude unclaimable material contained in the work to be registered, including "work that was previously published." (DE [47-18] at 1) (emphasis added). Among the examples demonstrating how to exclude previously published material is an example of a registrant who created a revised version of a video that has been updated and released in a different format. There, the "material excluded" is advised to state "preexisting footage," and the "material included" is advised to include new footage and revisions/additions to script. (DE [47-18] at 6.)

4.     <u>Registration Specialists</u>

As the documents cited above make clear, the USCO makes information regarding copyright registration readily accessible in printed and online materials. Guidance is also offered by Copyright Office "Registration Specialists." Registration Specialists are members of the USCO registration program who are responsible for examining claims to copyright. <u>See</u> Compendium Glossary. A Registration Specialist may communicate with the applicant regarding their registration. <u>See</u> Compendium § 605.3. During the course of this communication, the Specialist may correct errors and/or make notes to the copyright. Such notes are referred to as annotations and, if the copyright is ultimately registered, annotations may be made a part of the registration. <u>See</u> <u>generally</u> Compendium § 603-05.

Registration Specialists can correct obvious errors without communicating with the registrant. Thus, for example, they can correct misspellings that appear to be unintentional. <u>See</u> Compendium § 610.6. Specialists may also communicate with applicants to clear up material variances between terms used in the application and those used in deposit copies. <u>See</u> Compendium § 613.10.(B)(1)(b). The Compendium defines a "material variance" as one that "substantially affects the required information that should be included in the application or an essential issue that should be resolved before the Office may complete a registration." <u>See</u> Compendium Glossary.

Having discussed relevant resources that were available to Lieb when he filed the copyright registration for the HuffPost Article, the Court turns to discuss the statute forming the first branch of Defendant's motion and to a decision thereon.

B.     17 U.S.C. § 411(b): Circumstances Requiring Referral for Advice of the USCO

It is obvious that accurate information must be provided to the USCO when registering a copyright. Indeed, providing inaccurate information can invalidate a registration. In certain cases where the facts show that a registration included inaccurate information, courts must seek the advice of the USCO as to whether, if inaccurate information was known, it would have refused registration. The statutory framework for this procedure appears in 17 U.S.C. § 411(b)(1) ("Section 411(b)"). While the parties agree as to the mandatory nature of referral under Section 411(b), they part company with respect to whether the facts here require referral.

Section 411(b) has been referred to as the "safe harbor" provision of the Copyright Act. It allows for certificate validity even where an application for a copyright contains inaccurate information. See Unicolors, 142 S. Ct. at 945. This safe harbor provision, however, has its limits. Specifically, a certificate containing inaccurate information will not satisfy the registration requirement if:

(1) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate and,

(2) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

Id.; see also 37 C.F.R. 205.14 (setting forth statute and procedure for referral).

Where both conditions of Section 411(b)(1) are met, courts are required to refer the registration at issue back to the Register of Copyrights to advise whether "the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. 411(b)(2) (providing that "[i]n any case in which inaccurate information" that purportedly satisfies the exception "is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration") (emphasis added); see also King-Devick Test Inc. v. NYU

Langone Hosps., No. 17-CV-9307, 2019 WL 3071935, at * 7 (S.D.N.Y. July 15, 2019) (noting mandatory nature of referral); Palmer/Kane LLC v. Rosen Book Works LLC, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (hereinafter "Rosen Book Works") (same).

Courts may await development of a full factual record prior to seeking the advice of the Copyright Office. See Palmer/Kane LLC v. Garett Stevens Publ'g, No. 1:15-cv-7404, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) (hereinafter "Palmer/Kane"). In Palmer/Kane, for example, the allegation that the Copyright Office instructed plaintiff to complete her application in a particular manner presented a question of fact precluding referral to the USCO. See Palmer/Kane, 2016 WL 6238612 at *4; see also Sohm v. Scholastic Inc., No. 16-CV-7098, 2018 WL 1605214, *7 (S.D.N.Y. Mar. 28, 2018) (finding factual issue as to registrant's knowledge of inaccuracy precluded referral at time of motion), aff'd in part, rev'd in part and remanded, 959 F.3d 39 (2d Cir. 2020); accord Delivermed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 625 (7th Cir. 2013).

While taking a cautionary approach to avoid burdening the USCO is appropriate, Courts need not defer referral until the close of discovery. See King-Devick, 2019 WL 3071935, at * 9-10. Instead, courts are free to decide when a sufficient factual record exists such that referral would be fruitful. See id. at *10 (referring registration to USCO where facts alleged demonstrated prior publication of material at issue). When deciding whether a factual issue requires development, "context matters." Palmer/Kane, 2016 WL 6238612, at *4.

As the statutory language makes clear, referral under Section 411(b) is required only if both subsections 411(b)(1)(A) ("Subsection A") and section 411(b)(1)(B) ("Subsection B") are met. Thus, it must be shown that inaccurate information was included on the registration application "with knowledge that it was inaccurate" (Subsection A) and that the alleged

26

inaccuracy, if known "would have caused the Register of Copyrights to refuse registration" (Subsection B).

In <u>Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.</u>, _ U.S. _, 142 S. Ct. 941 (2022), the Supreme Court addressed the state of mind necessary to meet the "knowledge" referred to in Subsection A. Refusing to impose a <u>scienter</u> requirement, the Court noted that if Congress had intended to impose a standard other than simple knowledge, "it would have said so explicitly." <u>Id.</u> at 947. While at least one court has read <u>Unicolors</u> differently, <u>see FurnitureDealer.Net, Inc. v. Amazon.com, Inc.</u>, No. 18-232, 2022 WL 891473, *11-12 and n.7 (D. Minn. Mar. 25, 2022) (holding that <u>Unicolors</u> did not decide this issue, and that a showing of fraud is necessary to invoke referral under Section 411(b))), this Court finds <u>Unicolors</u> clear in adopting nothing more than an actual knowledge requirement.

In addition to addressing the state of mind necessary to invoke Section 411(b), <u>Unicolors</u> broadly construed the category of inaccuracies within the Section 411(b) safe harbor to include inaccurate statements of law as well as fact. <u>Unicolors</u>, 142 S. Ct. at 947-48. Thus, where a legal concept is unclear, Section 411(b) can excuse an inaccuracy. In <u>Unicolors</u>, this allowed for an inaccurate statement regarding an improper single registration for a group of multiple works to avoid referral to the Copyright Office to determine possible invalidity of the registration. <u>See id.</u>, at 945.  <u>Unicolors</u> was clear, however, in stating that not all filing inaccuracies fall within the Section 411(b) safe harbor. Thus, even while allowing for a broad category of excusable inaccuracies that could be outside of a registrant's "knowledge," the Supreme Court noted that "willful blindness" of facts can support a finding of actual knowledge within the meaning of Section 411(b) so as to satisfy the knowledge aspect of Subsection A. <u>See id.</u> at 948.

V.      The Motion to Refer is Granted

    A.      Subsection A

The inaccurate information in the registration for the HuffPost Article is the identification of that article as an original, unpublished first version that was not based upon an earlier published article. This inaccuracy arises from Lieb's failure to identify the previously published material upon which the HuffPost Article was based, i.e., the Dan's Papers Article. As a factual matter, the Dan's Papers Article is undoubtedly the work upon which the HuffPost Article is based. Indeed, the latter article is a near verbatim transcription of the former. It is therefore unquestionably inaccurate to describe the HuffPost Article as anything other than a work that incorporates the author's earlier published work – in copyright terms, a derivative work. Lieb cannot argue otherwise. The only question remaining as to Subsection A is whether the inaccuracy to the USCO was made "with knowledge that it was inaccurate."

As to "knowing" whether the failure to include the Dan's Papers Article was inaccurate, it is clear to the Court – as it must have been to Lieb – that he published the Dan's Papers Article prior to publishing the HuffPost Article, and thus he knew of the factual error of failing to disclose. The HuffPost Article itself notes that it was adapted from a Dan's Papers blog post and links to that article. Lieb certainly would not have linked to a prior article if he was in any way unaware that the Dan's Papers Article was previously published. It is thus established that Lieb knew, as a matter of fact, that it was inaccurate to describe the HuffPost Article as the first published version of his top then list.

As to whether Lieb can credibly claim that he did not know of the inaccuracy of his registration from a legal point of view, reference to the USCO resources described above is appropriate. The clarity of these resources, coupled with the simplicity of the information that

Lieb was asked to provide, makes this a case where only willful blindness to the law can explain the inaccuracy at issue. As demonstrated, USCO materials regarding previously published work are easily understandable by anyone, including a lay person without a law degree. They are clear and, under the facts of this case, easy to interpret and apply. The plain language of the instructions on Form TX – the form completed by Lieb – asks about previous publications in questions 5 and 6. Responding to these questions under the circumstances here requires no legal training; any member of the public seeking to register a copyright would be alerted to the issue of disclosing previously published material simply by responding truthfully to questions 5 and 6. If these questions were in any way unclear to the registrant, the simply worded Help Page would confirm that the registrant must characterize the HuffPost Article as having been based upon the Dan's Papers Article. Had Lieb, or any other filer under similar circumstances, been confused in any way by the language in Form TX, its instructions and the Help Page would clear up any uncertainty. As if these forms were not enough, additional information (along with easily understandable and clearly applicable examples) appear in several sections of the Compendium. Indeed, there are, by the Court's count, no less than twelve references to the necessity of disclosing prior published materials. Form TX and its instructions alone contain three such references in three pages – including use of the word "caution" in one of those instructions. In short, anyone who wrote and published two virtually identical articles can easily understand directions that require an applicant to note "any preexisting work or works that this work is based on or incorporates." (Friedberg Decl., Exh. M at 34.)

Despite the clarity of the USCO resources, Lieb continually seeks excusal for his inaccurate registration by arguing that he is not a copyright lawyer. While a lay person such as Lieb might not be intimately familiar with the concept of a "derivative" work, any registrant

completing the form for registration would immediately be alerted to a clear discussion of what this concept means. Such a lay person would understand, even if they consulted only Form TX, the necessity of disclosing their own previously published material. The terms "prior" and "published" are not nuanced legal terms – they are plain English. Lieb cannot argue that he inadvertently failed to include reference to the Dan's Papers article as a mistake that renders subsection A inapplicable.

Lieb's reliance on Unicolors' recognition of excusing legal errors is misplaced. While Unicolors broadly included Subsection A inaccuracies to include legal mistakes, it cannot have meant that only copyright lawyers are in a position to be held accountable for inaccuracies regarding the law. The ability to understand Form TX and related materials regarding earlier published work does not require legal knowledge of the term "derivative" work. Unlike the registrant in Unicolors, Lieb cannot claim that his lack of legal knowledge excuses the failure to provide accurate information. In contrast to the facts presented in Unicolors, and as foreshadowed there, this is a case where there is no question but that the applicant was "willfully blind" to providing accurate information. Unicolors, 142 S. Ct. at 948. The facts bear this out.

Finally, in addition to ignoring all of the written materials provided by the USCO, Lieb also chose not to avail himself of the invitation to communicate with the USCO via a Registration Specialist. This is an opportunity he failed to take advantage of even in 2015 – after his lawyer was contacted by defense counsel and alerted to the derivative nature of the registered article. Thus, there was no opportunity for the Copyright Office to determine whether information withheld by Lieb could nonetheless allow for registration. Lieb cannot claim that the Copyright Office could have or should have corrected his improper registration. The failure to disclose previously published work is not the kind of obvious error that a specialist can correct

30

on their own. Indeed, the information that would allow for such a correction was never made available to any specialist. Thus, here, there is no information to be "corrected" and there is no way the Copyright Office can "fix" Lieb's registration. Lieb could have done any number of things – he did not, but instead puts the onus on the Copyright Office, or the Court, to excuse his errors. While Lieb may think his error is meaningless, that does not require such a finding by the USCO or by this court.

In sum, this is a case where the USCO provided the clearest of directions and the registrant knowingly ignored them. Accordingly, the Court holds that Lieb presented inaccurate information to the Copyright Office with knowledge of its factual and legal inaccuracy. Subsection A of Section 411 has been satisfied.

B.   Subsection B

Turning to Subsection B, the issue is whether the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. The inaccurate information here falls squarely into the category of information that would have caused refusal. Here, proper disclosure of the Dan's Papers Article would have necessitated refusal to register a copyright in the HuffPost Article as anything but a derivative work. There are clear rules for the registration of such literary work. These rules speak directly to the necessity of disclaiming previously published information. See e.g., Compendium § 202.1. If this was not a matter of significance under the Copyright Law, the USCO would likely not have gone to the lengths outlined above to communicate its importance to the public. The inaccurate information here is among the most basic and essential information to be provided to the USCO when deciding whether to register a copyright. It cannot be categorized as immaterial. While consultation with a Registration Specialist may have helped, Lieb's failure to avail himself of this opportunity made

it impossible at the registration stage for the Copyright Office to make an informed decision as to Lieb's registration. As noted, these Registration Specialists are empowered, on their own, to correct obvious inaccuracies. Here, the failure to include critical information made it impossible, until now, for the USCO to advise as to the validity of Lieb's registration. Now, upon referral, it has the opportunity to do so.

For the foregoing reasons, the Court holds that Plaintiff made a knowing misrepresentation to the Register of Copyrights sufficient to require that this matter be referred thereto to determine whether the registration would have been refused. Defendant's motion for summary judgment as to Section 411(b) is therefore granted.

VI.   The Remainder of the Motion Directed to the Copyright Claim

The Court's holding as to Section 411(b) makes any decision regarding Defendant's motion for summary judgment as to infringement premature. In the event that the parties choose to continue to litigate this case, and this matter continues after receipt of advice from the Copyright Office, the Court will consider the issue of infringement with a focus on the question of substantial similarity. The Court will require additional briefing to address the particular issue of whether Plaintiff is claiming copyright protection for any title and short phrases used in the HuffPost Article. The Court will also inquire as to whether Lieb is claiming copyright protection in the use of the familiar and widely used "top ten" format. The Court expresses no opinion as to these issues at this time.

VII.   Motion for Summary Judgment as to Section 349 Claim

Defendant seeks dismissal of the Section 349 Claim on the ground of preemption. Where a state law claim alleges nothing more than harms arising from alleged copyright infringement, such claim is properly dismissed as preempted. See e.g., Bubble Genius LLC v. Smith, 239 F.

Supp. 3d 586, 604-05 (E.D.N.Y. 2017); <u>Eyal R.D. Corp. v. Jewelex New York, Ltd.</u>, 784 F.

Supp. 2d 441, 449 (S.D.N.Y. 2011). Here, Lieb alleges only harm arising out of alleged wrongful

copying of his article. As such, he alleges no harm outside the realm of copyright law and his

claim is preempted. <u>See</u> <u>The Diamond Collection, LLC v. Underwraps Costume Corp.</u>, No. 2:17-

cv-00061, 2018 WL 1832928, at *8 (E.D.N.Y. Apr. 16, 2018) (finding Section 349 claim

preempted); <u>Bubble Genius</u>, 239 F. Supp. 3d at 604-05 (finding Section 360-1 claim preempted).

Even if not preempted, Lieb's Section 349 Claim is properly dismissed. To properly

allege a claim under Section 349, a plaintiff must allege: "(1) the defendant's deceptive acts were

directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been

injured as a result." <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521 (2d Cir. 2000) (citing <u>Oswego</u>

<u>Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25 (1995)). Plaintiff

here alleges no such public harm. Instead, the only harm alleged is to Plaintiff's pecuniary

interest in the potential licensing of his article. In the absence of a proper allegation of public

harm, no claim is stated under Section 349. Accordingly, that claim is dismissed. <u>See</u>

<u>MyPlayCity, Inc. v. Conduit Ltd.</u>, No. 10 Civ. 1615, 2012 WL 1107648, at *15 (S.D.N.Y. Mar.

30, 2012) (holding that a claim arising out of alleged trademark infringement action reflects no

public harm sufficient to satisfy the requirements of Section 349); <u>Gucci America, Inc. v. Duty</u>

<u>Free Apparel, Ltd.</u>, 277 F. Supp. 2d 269, 272-73 (S.D.N.Y. 2003) (same). Moreover, upon

review of the HuffPost Article, the Court holds that it is not misleading as a matter of law.

Accordingly, the Court grants the motion for summary judgment dismissing Lieb's Section 349

Claim.

<u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendant's motion for summary judgment, without prejudice, and to the extent that the registration for the HuffPost Article (Certificate of Copyright Registration No. TX- 7-932-377) is hereby referred to the United States Copyright Office to advise the Court as to whether it would have refused Plaintiff's registration had it known of the information that he knowingly failed to disclose to that office. Defendant's motion for summary judgment with respect to Plaintiff's claim pursuant to Section 349 of the New York General Business Law is also granted, with prejudice. Plaintiff's cross-motion for summary judgment is denied.

The Clerk of the Court is directed to close this case with leave to re-open. Specifically, counsel are granted leave to re-open this case within one week of receipt of the advice of the United States Copyright Office.

**SO ORDERED.**

Dated: Central Islip, New York
        April 14, 2022

                                                     /s/ Anne Y. Shields
                                                    Anne Y. Shields
                                                    United States Magistrate Judge